## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID ALVAREZ, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff*,<br><br>  v.<br><br>HOVERTON, LLC. d/b/a SWAGTRON,<br><br>      *Defendant*. | Case No.:<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, David Alvarez ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Complaint against Defendant, Hoverton, LLC d/b/a Swagtron (Defendant), and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Plaintiff brings this class action lawsuit as individuals who purchased Defendant Swagtron's SG-5 Swagger 5 Boost Commuter Electric Scooter (hereinafter "Products" or "Scooter") for normal household use.

2. Major retail outlets such as Walmart and Sam's Club have issued a recall for the Swagtron SG-5 Swagger 5 Boost Commuter Electric Scooters with Lithium-Ion Batteries due to fire and burn hazards that could cause serious bodily injury or death[1].

---

[1] https://www.cpsc.gov/Recalls/2025/Walmart-Recalls-Swagtron-SG-5-Boost-Commuter-Electric-Scooters-with-Lithium-Ion-Batteries-Due-to-Fire-and-Burn-Hazards-Risk-of-Serious-Injury-and-Death (Last accessed March 19,

3. The Scooters are powered by a lithium-ion battery.

4. Unfortunately, the Products are defective because they can catch fire.[2] In the recall notice, Walmart reports claims of consumers suffering burn injuries and property damage.

5. Hoverton, LLC sells these Scooters under the brand name "Swagtron."

6. The Walmart/Sam's Recall alone involves approximately 18,000 Scooters whose retail price ranged from $175-$450 per unit[3].

7. Plaintiff believes consumers can still purchase "recertified" Swagtron Swagger 5 Boost Scooters directly from Swagtron's website[4].

8. Swagtron also sells its products on Amazon's Platform via an online store[5].

9. As such, these Scooters are distributed, marketed, and sold by Defendant to consumers across the United States.

10. The model numbers are SWGR5-V2-SLV, SWGR5-V2-2, SG5 Boost, SG-5S, 96262-2, 96262-9, SG-5S, and 96560-2. The model numbers are affixed to the side of the scooter deck.

11. The Products are defective because the lithium-ion battery can overheat and catch fire. Despite this known fire risk, Defendant represented that the Scooters were safe and effective for their intended use.

12. Other manufacturers formulate, produce, and sell non-defective Scooters with

---

2025.)
[2] https://www.cpsc.gov/Recalls/2025/Walmart-Recalls-Swagtron-SG-5-Boost-Commuter-Electric-Scooters-with-Lithium-Ion-Batteries-Due-to-Fire-and-Burn-Hazards-Risk-of-Serious-Injury-and-Death (Last accessed March 19, 2025.)
[3] https://www.mlive.com/news/2025/02/walmart-recalls-18k-electric-scooters-that-can-catch-fire-offers-full-refund.html (Last accessed March 19, 2025.)
[4] https://swagtron.com/product/swagger-5-boost-electric-commuter-scooter-recertified/ (Last accessed March 19, 2025.)
[5] https://www.amazon.com/stores/page/229CFDCC-2063-4D1A-8E1C-C1A06F26AF8C?ingress=2&visitId=dc48565d-e00f-48f7-9186-99f4d9aa7e7c&store_ref=bl_ast_dp_brandLogo_sto&ref_=ast_bln (Last accessed March 19, 2025.)

formulations and production methods that do not cause the Products to catch fire, which is evidence that the fire risk inherent with Defendant's Products is demonstrably avoidable.

13. Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

14. Plaintiff purchased the Products, while lacking the knowledge that the Products could catch fire, thus causing serious harm to those who use such Products.

15. All consumers who purchased the worthless and dangerous Products have suffered losses.

16. As a result of the above losses, Plaintiff seeks damages and equitable remedies on behalf of himself and the putative class.

(Space left intentionally blank)



## PARTIES

17. Plaintiff David Alvarez is a resident and citizen of Medford, New York. Medford is located within Suffolk County.

18. Defendant Hoverton, LLC d/b/a Swagtron is a US corporation organized and existing under the laws of the State of Indiana with its principal place of business located at 7250 Vorden Parkway South Bend, Indiana 46628.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d).

20. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given that the Defendant has conducted substantial business in this judicial district and in the State of Alabama.

21. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that the distribution and sale of the defective product occurred within this District.

## FACTUAL ALLEGATIONS

22. Major retailers such as Walmart and Sam's Club have issued recalls for certain Swagtron SG-5 Swagger 5 Boost Commuter Scooters due to a fire hazard.

23. Defendant has received reports of incidents involving the Scooters including overheating, melting, smoking and fire.

24. The Consumer Product Safety Commission issued a recall for the defective Products on February 20, 2025.[6]

25. The recall includes model numbers are SWGR5-V2-SLV, SWGR5-V2-2, SG5 Boost, SG-5S, 96262-2, 96262-9, SG-5S, and 96560-2.

26. Plaintiff Alvarez purchased his Scooter from Walmart.

27. Alvarez experienced overheating during the course of the Product's normal use.

---

[6] *https://www.cpsc.gov/Recalls/2025/Walmart-Recalls-Swagtron-SG-5-Boost-Commuter-Electric-Scooters-with-Lithium-Ion-Batteries-Due-to-Fire-and-Burn-Hazards-Risk-of-Serious-Injury-and-Death*. (Last accessed March 19, 2025.)

*Defendant's Misrepresentations and Omissions are Actionable*

28. Plaintiff bargained for a Product that was safe to use. Defendant's fire prone Products were, and are, unsafe. As a result of the risk of fire, Plaintiff, and all others similarly situated, were deprived the basis of their bargain given that the Defendant sold them a product that could overheat and spontaneously ignite or catch fire. This dangerous fire risk inherent to the Products renders them unmerchantable and unfit for their normal intended use.

29. The Products are not fit for their intended use by humans as they expose consumers to a fire hazard. Plaintiff is further entitled to damages for the injury sustained in being exposed to such danger, damages related to the Defendant's conduct, and injunctive relief.

30. Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the risk of catching fire.

31. The Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding the risk of catching fire affecting the Products.

32. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had he known of the material omissions of material facts regarding the possibility of the Products overheating and catching on fire.

33. Plaintiff bought the Swagtron Scooter for personal use.

34. Plaintiff intended to purchase a Product that would be safe for normal use but instead was sold a dangerous fire hazard that eventually overheated and melted.

35. If Plaintiff had been aware of the risk fire in the Scooters, he would not have purchased the Product or would have paid significantly less.

36. As a result of the Defendant's actions, Plaintiff has incurred damages.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**All persons within the United States who purchased Swagtron's SG-5 Swagger 5 Boost Commuter Electric Scooter during the period within the statute of limitations**.

38. This Nationwide Class shall be referred to herein as the "Class."

39. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

40. Excluded from the Class and Sub-classes are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

41. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

42. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43. The proposed Class is so numerous that the joinder of all members is impracticable.

44. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

45. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is

so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

46. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

47. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a defective product posing a fire hazard. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiff.

48. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other

financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

49. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class a may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

50. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendant's wrongful retention of Plaintiff and Class Members' payments was an act of conversion;

    b.    Whether Defendant breached its contract with the Plaintiff by failing to refund Plaintiff's payments upon the announcement of the recall;

    c.    Whether Defendant's retention of Plaintiff and Class Members' payments was a violation of Defendant's duty of good faith and fair dealing;

    d.    Whether Defendant was unjustly enriched as a result of retaining and refusing to refund Plaintiff and Class Members' payments upon the recall announcement;

    e.    The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

    f.    Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT

51. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

52. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

53. Plaintiff, and the other members of the Class, conferred a monetary benefit upon Defendant by purchasing the defective Scooters either directly or through major online or in-person retail outlets. These payments were not gifts or donations but were made in exchange for products that were falsely represented as safe and reliable.

54. Defendant voluntarily accepted and retained these benefits. Defendant manufactured, marketed and distributed the defective Scooters without adequate warnings of the known defect.

55. The benefit was obtained unlawfully by Defendant distributing a Product prone to

catching fire. Retaining these profits without disclosing the defect or refunding consumers is unjust and inequitable.

56. The Defendant received revenues from the sales of this defective Scooter at the expense of Plaintiff and the Class, who would not have purchased the Scooter had they been aware of the defect. The labeling and marketing of the Products by Defendant was misleading and caused direct economic harm and risk of injury to Plaintiff and the Class.

57. Defendant has been unjustly enriched by retaining the revenues derived from the sales of Scooters with defective batteries. Retention of these revenues is inequitable because Defendant failed to disclose the known risks associated with their products, thereby misleading consumers and endangering their safety.

58. Plaintiff and the members of the Class seek restitution of the monies conferred upon Defendant as a result of their unjust enrichment. Defendant should be required to disgorge the profits obtained from the sale of Scooters equipped with defective batteries and provide restitution to Plaintiff and the Classes, as ordered by the Court.

## COUNT II
## FRAUDULENT CONCEALMENT

59. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

60. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

61. Defendant had a duty to disclose material facts to Plaintiff and Class Members given their relationship as contracting parties and intended users of the Products.

62. Defendant had superior knowledge about the defective nature of the product at issue, particularly the risk of overheating and catching fire, which made them unfit for ordinary

use.

63. During this time, Plaintiff and Class Members were using the Products without knowing of these fire risks, reasonably believing that the Products were safe for use.

64. Defendant knew or should have known about the defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the defect, and either knew or should have known about the risk, particularly if the recall had already been issued.

65. Defendant failed to disclose these material facts with the intent to induce consumers into purchasing the Products, despite the latent defect. This failure constitutes fraudulent concealment as Defendant intentionally withheld critical safety information that, if disclosed, would have affected consumer purchasing decisions.

66. Plaintiff and Class Members reasonably relied on Defendant's failure to disclose, believing that the Products were safe when, in fact, they were not.

67. Had Plaintiff and Class Members known the true risks, they would not have purchased the Products or would have paid significantly less.

68. As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

69. Because Defendant acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendant for knowingly concealing critical safety information from consumers.

## COUNT III
## STRICT LIABILITY – FAILURE TO WARN

70. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

71. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

72. Defendant had a duty to warn Plaintiff and Class Members about the Defect and the true risks associated with the Products.

73. As the manufacturer, Defendant was in a superior position to know about the defective Products and their dangerous propensity to overheat and catch fire. However, Defendant failed to warn consumers, retailers, and regulatory agencies about the risks when it had the opportunity to do so.

74. Defendant failed to provide adequate warnings regarding the risks of the Products before or at the time of sale, particularly if it continued selling the Products despite knowledge of the recall or other safety concerns.

75. Defendant had access to critical safety information regarding the fire hazards associated with the Products, yet failed to warn Plaintiff and Class Members, leaving them unaware of the dangers.

76. Despite knowing the risks, Defendant did not strengthen their warnings or provide adequate safety disclosures before selling the Products. Instead, Defendant actively concealed or ignored the need for stronger warnings, prioritizing sales over consumer safety.

77. Plaintiff and Class Members would not have purchased, chosen, or paid for the Products had they known of the risk of overheating and fire. Because Defendant failed to provide proper warnings, consumers were deprived of their right to make an informed purchasing decision.

78. The Defect proximately caused Plaintiff's and Class Members' damages, as they purchased and used a Product that posed an unreasonable risk of harm without their knowledge.

79. Plaintiff and Class Members have suffered damages in an amount to be determined

at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT IV
## STRICT LIABILITY – DESIGN DEFECT

80. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

81. Plaintiff bring this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

82. The design of the recalled Swagtron SG-5 Scooters was defective and unreasonably dangerous, making the Products unsafe for consumer use.

83. The risk of overheating and igniting into flames while Plaintiff and Class Members used the Products caused exposure to harmful materials and posed a serious risk of injury or property damage.

84. The design defect rendered the Products not reasonably fit, suitable, or safe for their intended purpose, violating consumer safety expectations.

85. The risk of fire and overheating outweighed the benefits of the Products, making them unreasonably dangerous to consumers.

86. There were alternatives, safer Scooter designs available, including other Scooters that did not overheat or pose a similar fire risk, meaning Defendant had the ability to manufacture a safer product, but failed to do so.

87. Defendant could have implemented safer design modifications that would have reduced or eliminated the fire risk, such as improved thermal management systems, enhanced safety circuits, or better casing materials, but failed to do so.

88. Because the Products were unreasonably unsafe and did not perform as an ordinary

consumer would expect, they should not have been sold to consumers.

89. Defendant is strictly liable for selling the defective Product, as strict liability applies to all entities in the chain of distribution.

90. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT V
## NEGLIGENT FAILURE TO WARN

91. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

92. Plaintiff bring this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

93. Defendant owed Plaintiff and Class Members a duty of care to warn of any risks associated with the Products.

94. Defendant knew or should have known that the defective product posed a significant risk of overheating and catching fire but failed to warn Plaintiff and Class Members.

95. Defendant had a duty to warn consumers if it had knowledge or reason to know about the defect including through prior consumer complaints, product recalls, or other safety notices, but failed to provide adequate warnings before or at the time of sale.

96. Plaintiff and Class Members had no way of knowing about the Product's latent defect, as an ordinary consumer would not expect the Product to catch fire under normal use.

97. Defendant's breach of its duty to warn caused Plaintiff and Class Members to suffer economic damages and physical injuries, including the risk of burns, exposure to toxic substances, and property damage.

98. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees available under law.

## COUNT VI
## NEGLIGENT DESIGN DEFECT

99. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

100. Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

101. Defendant owed Plaintiff and Class Members a duty of care to design, manufacture, and sell products that were safe for their intended use.

102. The design of the recalled Swagtron SG-5 Scooter was defective and unreasonably dangerous, causing exposure to fire, smoke, and the risk of severe injury or property damage.

103. The design of the Products rendered them unfit, unsuitable, and unsafe for their intended purpose, as the risk of overheating and catching fire far outweighed any benefits of the Product.

104. There were alternative, safer Scooter designs available that did not overheat or pose similar fire risks, meaning Defendant could have implemented a safer design but failed to do so.

105. Defendant had access to industry knowledge, safety reports, and consumer complaints that should have alerted them to the defective nature of the Products.

106. Defendant was negligent in selling the defective Products, as they either knew or should have known that the design was unreasonably dangerous, particularly if the recall had been issued or customer complaints had been received before further sales.

107. The negligent design of the Product was the proximate cause of Plaintiff's and Class

Members' damages, as it posed an inherent and foreseeable risk of harm that Defendant failed to address.

108. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT VII
### Violation of New York General Business Law § 349
### NY GBL § 349

109. Plaintiff incorporates the allegations set forth in the previous aforementioned Paragraphs as though set forth fully herein.

110. NY GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service […]"

111. Here, Defendant purposefully and knowingly took actions directed to consumers, including to Plaintiff Alvarez and the Class, in the form of branding, marketing, advertising and other messaging, claiming that Defendant's products were fit for their ordinary purpose.

112. Defendant's acts were and are materially misleading because Defendant in fact sold the Scooters into commerce which were defective and subjected to overheating and catching fire. Plaintiff and the Class have been injured because of Defendant's deceptive or unfair acts, because they purchased Defendant's Products at a premium price on the basis of the fact that those Products were fit for ordinary use when they were not.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against the Defendant as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the

    Class and Plaintiff's attorneys as Class Counsel;

B.  For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.  For prejudgment interest on all amounts awarded;

F.  For an order of restitution and all other forms of equitable monetary relief;

G.  For injunctive relief as pleaded or as the Court may deem proper;

H.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.  For an order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: March 28, 2025,    Respectfully submitted,

            <u>/s/ Philip Furia</u>
            Philip Furia, Esq.
            **SULTZER & LIPARI, PLLC**
            85 Civic Center Plaza, Suite 200
            Poughkeepsie, NY 12601
            (845)483-7100
            furiap@thesultzerlawgroup.com

            Paul J. Doolittle, Esq. (*Pro Hac Vice* Forthcoming)
            **POULIN | WILLEY | ANASTOPOULO, LLC**
            32 Ann Street
            Charleston, SC 29403
            T: (803) 222 – 2222
            E: paul.doolittle@poulinwilley.com
             cmad@poulinwilley.com

            *Attorneys for Plaintiff and the Putative Class*